1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CRYSTAL RICHARDS, et al., | Case No. 1:20-cv-00586-JLT-SAB |
| Plaintiffs, | ORDER GRANTING MOTION FOR SUMMARY ADJUDICATION OF LEGAL DISPUTE REGARDING APPLICABLE MICRA DAMAGES LIMIT IN FAVOR OF PLAINTIFFS |
| v. | |
| UNITED STATES OF AMERICA, et al., | |
| Defendants. | (ECF Nos. 34, 36, 38, 39, 40) |

## I.

## INTRODUCTION AND BACKGROUND

This action was filed on April 23, 2020, by Plaintiffs Crystal Richards ("Ms. Richards" or the "Mother"), Michael Richards ("Mr. Richards" or the "Father"), and the decedent child's maternal grandmother Caroline Cuellar ("Ms. Cuellar"), against Defendants the United States of America (substituted in place of former Defendants Family Healthcare Network and Elizabeth Enderton, D.O.), and Kaweah Delta Health Care District ("Kaweah"), pursuant to the Federal Tort Claims Action 28 U.S.C. Sections 1346(b) and 2671, *et. seq.* (ECF No. 1.) Plaintiffs bring wrongful death and negligent infliction of emotional distress ("NIED") claims as an alleged result of medical negligence against Kaweah for care and treatment to Plaintiff Ms. Richards and decedent baby Liana Richards ("Baby Liana"), on or about January 30, 2019, to January 31, 2019. Specifically, Mr. Richards and Ms. Richards are both claiming a wrongful death cause of

1   action.  Mr. Richards and Ms. Cuellar are each claiming separate Bystander NIED causes of

2   action.  Ms. Richards is additionally claiming her own Direct NIED cause of action.

3       On July 31, 2020, Defendant Kaweah filed an answer.  (ECF No. 12.)  On August 6,

4   2020, Defendant the United States filed an answer.  (ECF No. 14.)  Kaweah's twelfth affirmative

5   defense states: "That in the event Defendant KDHCD is found to be negligent as to the State

6   claim against it, which is expressly herein denied, the damages for non-economic losses shall not

7   exceed the amounts specified in California Civil Code section 3333.2."  (ECF No. 12 at 5.)  The

8   United States' twelfth affirmative defense states: "Plaintiffs' claims are subject to the limitations

9   on recovery contained in the California Medical Injury Compensation Reform Act, including but

10  not limited to the limitations set forth in California Code sections 3333.1 and 3333.2 and

11  California Code of Civil Procedure section 667.7."  (ECF No. 14 at 4-5.)  On August 13, 2021,

12  the District Judge approved and entered the parties' stipulation whereby the parties' agreed

13  pursuant to 28 U.S.C. section 636(c)(1), to limited consent to have a United States Magistrate

14  Judge decide Plaintiffs' partial motion for summary adjudication to determine whether there are

15  one or two $250,000 limitations on Plaintiffs' damages for non-economic losses pursuant to

16  California Civil Code section 3333.2 on each of the Defendants' respective twelfth affirmative

17  defenses.  (ECF No. 34.)

18      On October 11, 2021, Plaintiffs filed the instant motion for summary adjudication,

19  entitled as memorandum in support of the stipulated motion for summary adjudication.  (ECF

20  No. 36.)  On November 23, 2021, Kaweah filed an opposition, which the United States joined on

21  November 24, 2021.  (ECF Nos. 38, 39.)[1]  On December 8, 2021, Plaintiffs filed a reply brief.

22  (ECF No. 40.)  A hearing on the motion was held via videoconference on December 15, 2021.

23  (ECF No. 41.)  Adam Stirrup and Stephanie Borchers appeared on behalf of Plaintiffs.  Jeffrey

24  Lodge appeared on behalf of Defendant United States of America.  Richard Salinas appeared on

25

26  [1] While Defendant Kaweah submitted the primary opposition brief in this matter, the United States joined fully in
    the opposition, aside from the United States noting a disagreement with a description of a case contained within
27  Kaweah's briefing, which the Court discusses below.  Given the joinder, the Court will refer to the United States and
    Kaweah generally as Defendants, unless specifically noting a difference or statement made during oral argument or
28  noting the one clarification proffered in the United States' briefing.

1  behalf of Defendant Kaweah Delta Healthcare District.

2  ## II.

3  ### LEGAL STANDARD

4  A court may grant summary adjudication on part of a clam or defense.  Fed. R. Civ. P. 56

5  (a) ("A party may move for summary judgment, identifying each claim or defense--or the part of

6  each claim or defense--on which summary judgment is sought."); Allstate Ins. Co. v. Madan, 889

7  F. Supp. 374, 378 (C.D. Cal. 1995) ("Rule 56 of the Federal Rules of Civil Procedure allow[s] a

8  court to grant summary adjudication on part of a claim or defense.").

9  In California, the Medical Injury Compensation Reform Act ("MICRA") enacted a cap to

10 limit the recovery of noneconomic damages due to professional medical negligence to $250,000.

11 Cal. Civ. Code § 3333.2(a)-(b).  The question of whether MICRA limits noneconomic damages

12 recoverable by a plaintiff is a question of law.  Taylor v. United States, 821 F.2d 1428, 1430 (9th

13 Cir. 1987) ("Whether § 3333.2 limits noneconomic damages recoverable by Taylor is a question

14 of law, which this Court reviews de novo.") (hereinafter "Taylor").  Defendants assert as their

15 twelfth affirmative defenses, that MICRA limits the recovery of damages for all Plaintiffs to a

16 single award of $250,000.[2]  The parties have stipulated and agree that the Court has authority to

17 determine whether MICRA limits recovery to a one single and combined award of $250,000 for

18 noneconomic damages for the Plaintiffs' claims in this action.

19 ## III.

20 ### DISCUSSION

21 Plaintiffs contend two separate $250,000 MICRA caps apply to the Mother's NIED claim

22 and the Father's wrongful death claim.  Plaintiffs rely on Burgess v. Superior Ct., 2 Cal. 4th

23 1064, 1076, 831 P.2d 1197 (1992) (hereinafter "Burgess"), and related cases, in proffering that

24 two independent injuries occurred from two separate acts of medical negligence, with: (1) Ms.

25 Richards' personal noneconomic damages arising from the birth itself as the birthing mother; and

26 (2) Mr. Richards' noneconomic damages arising from the wrongful death of the child.  (Pls.'

27

28 [2]  The Court notes that the Ninth Circuit has stated "Section 3333.2 is a limitation of liability, not an affirmative defense."  Taylor, 821 F.2d at 1433.

1   Mem. P. & A. Supp. Stip. Mot. Summ. Adjud. ("Mot.") 4, ECF No. 36.)  Plaintiffs submit that

2   where one act of medical negligence causes a discrete injury to multiple plaintiffs, each of such

3   plaintiffs is entitled to recover for their noneconomic losses, and each of the individual plaintiff's

4   claims cannot exceed $250,000.  Defendants contend that because all claimants must be joined in

5   a wrongful death action, <u>Yates v. Pollock</u>, 194 Cal. App. 3d 195, 200 (Ct. App. 1987)

6   (hereinafter "<u>Yates</u>"), and MICRA limits recovery for a wrongful death claim to a single, shared

7   recovery of $250,000, Ms. Richards cannot receive a separate $250,000 MICRA cap through her

8   Direct NIED cause of action.  (Def. Kaweah's Opp'n Pls.' Mot. Summ. J. ("Opp'n") 4, ECF No.

9   38.)

### A.      Overview of California Law Pertaining to MICRA and Wrongful Death

11          Under the Federal Tort Claims Act ("FTCA"), the measure of damages in FTCA cases

12  are generally based on the law of the state where the tort occurred.  <u>See</u> <u>Shaw v. United States</u>,

13  741 F.2d 1202, 1205 (9th Cir. 1984) ("The components and measure of damages in FTCA claims

14  are taken from the state where the tort occurred.").  In California, MICRA enacted a cap to limit

15  the recovery of noneconomic damages to $250,000 in professional medical malpractice cases.

16  California Civil Code Section 3333.2 provides in relevant part that:

17              (a) In any action for injury against a health care provider based on
                professional negligence, the injured plaintiff shall be entitled to
18              recover noneconomic losses to compensate for pain, suffering,
                inconvenience, physical impairment, disfigurement and other
19              nonpecuniary damage.

20              (b) In no action shall the amount of damages for noneconomic
                losses exceed two hundred fifty thousand dollars ($250,000).
21

22  Cal. Civ. Code § 3333.2(a)-(b).

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

4

The California Practice Guide[3] provides one analysis and summary of how California courts have interpreted MICRA's applicability to separate and discrete injuries of multiple plaintiffs stemming from one incident of medical negligence:

> Section 3333.2 does *not* limit noneconomic damages to "a single injury-causing incident"; rather, it focuses on "the *injured plaintiff*" who is entitled to recover noneconomic losses in an amount not to exceed $250,000 (Civ.C. § 3333.2(a)—"In any action for injury against a health care provider based on professional negligence, the *injured plaintiff* shall be entitled to recover …" (emphasis added)).
>
> Thus, where a single act of medical negligence causes *discrete* injury to *multiple* plaintiffs, *each* plaintiff is entitled to recover up to $250,000 in noneconomic damages; and this is so whether the multiple plaintiffs bring separate actions against the medical malpractice defendant *or join* in a single lawsuit (e.g., "direct victim" suing for bodily injury and spouse joining action for loss of consortium; or injured victim suing on own malpractice claim and heirs suing for wrongful death after victim dies from injuries; *see ¶ 3:1936*). [*Atkins v. Strayhorn* (1990) 223 CA3d 1380, 1394-1396, 273 CR 231, 238-240 & fn. 9—to subject separately-injured Ps to a single collective cap "would be to render the statute an absurdity"]

Haning, Flahavan, Cheng & Wright, F. Micra Provisions Affecting Damages, F. Micra Provisions Affecting Damages, Cal. Prac. Guide Pers. Inj. Ch. 3-F, § 3:1935. The California Practice Guide also describes how wrongful death claimants have a discrete injury in addition to the injury suffered by the victim:

> (a) [3:1936] **Separate caps for victim's injury suit and claimants' subsequent wrongful death action:** As with loss of consortium (¶ 3:1935), wrongful death claimants suffer discrete injury in addition to the injury suffered by the victim. Thus, *separate* $250,000 damage caps apply to noneconomic damages obtained (i) by a patient in a malpractice action (or settlement), and (ii) by the patient's wrongful death claimants in a subsequent suit brought by reason of the patient's death from the same malpractice. [*Schwarder v. United States* (9th Cir. 1992) 974 F2d 1118, 1125-1126]

F. Micra Provisions Affecting Damages, Cal. Prac. Guide Pers. Inj. Ch. 3-F, § 3:1936.

---

[3] The Court recognizes the treatise is not binding; rather, it is one analysis of the current state of the law as to this issue, and tells us how these practitioners or scholars view such issue. The Court is not accepting such interpretation as valid or invalid a whole, however, the Court utilizes the summary of California law as an introduction to the lay of the law between the somewhat limited directly relevant cases that the parties' focus their briefing on, and that the Court discusses herein.

In California, a "cause of action for wrongful death is a statutory claim (§§ 377.60–377.62) that compensates specified heirs of the decedent for losses suffered as a result of a decedent's death." San Diego Gas & Elec. Co. v. Superior Ct., 146 Cal. App. 4th 1545, 1550–51 (2007).  The recovery is a lump sum determined by each of the "heirs' separate interest in the decedent's life . . . with each heir required to prove his or her own individual loss in order to share in the verdict." Id. (citations omitted).  A wrongful death claim is an independent claim. Avila v. S. California Specialty Care, Inc., 20 Cal. App. 5th 835, 844, 230 Cal. Rptr. 3d 42, 49 (2018) ("Unlike some jurisdictions wherein wrongful death actions are derivative, Code of Civil Procedure section 377.60 creates a *new cause of action* in favor of the heirs as beneficiaries, based upon their own independent pecuniary injury suffered by loss of a relative, and distinct from any the deceased might have maintained had he survived.") (citations and quotation marks omitted).  "Because a wrongful death action compensates an heir for his or her own independent pecuniary losses, it is one for 'personal injury to the heir[,]' . . . [and] [t]hus, in a wrongful death action the 'injury' is not the general loss of the decedent, but the particular loss of the decedent to each individual claimant." San Diego Gas & Elec. Co, 146 Cal. App. 4th at 1550–51 (citations omitted).

A wrongful death action in California is described as joint, single, and indivisible.  "In stating that an action for wrongful death is joint, it is meant that all heirs should join or be joined in the action and that a single verdict should be rendered for all recoverable damages; when it is said that the action is single, it is meant that only one action for wrongful death may be brought whether, in fact, it is instituted by all or only one of the heirs, or by the personal representative of the decedent as statutory trustee for the heirs; and when it is said that the action is indivisible, it is meant that there cannot be a series of suits by heirs against the tortfeasor for their individual damages." Cross v. Pac. Gas & Elec. Co., 60 Cal. 2d 690, 694, 388 P.2d 353 (1964); see also Helling v. Lew, 28 Cal. App. 3d 434 (Ct. App. 1972) ("The action is joint only insofar as . . . all heirs should join in the action and that the damages awarded should be in a lump sum; it is single only insofar as it must be maintained by one of the statutory designees . . . and it is indivisible only insofar as it precludes omitted heirs from bringing subsequent and individual actions for the

1    recovery of their individual damages."). "There is, however, no requirement that plaintiffs must

2    join all causes of action and all potential defendants in one action." Helling v. Lew, 28 Cal. App.

3    3d at 434.  Although recovery for wrongful death in California "is in the form of a 'lump sum,'

4    the amount is determined in accordance with the various heirs' separate interests in the

5    deceased's life and the loss suffered by each by reason of the death[;] no recovery can be had by

6    an heir who did not sustain a loss[;] . . . [and] [a]ccordingly, each heir should be regarded as

7    having a personal and separate cause of action." Cross, 60 Cal. 2d at 694.

8         **B.     The Court finds the Caselaw Weighs in Favor of Plaintiffs' Position**

9         The parties agree a wrongful death medical malpractice action is generally capped at one

10   $250,000 limit, no matter how many plaintiffs make the wrongful death claim, because such

11   actions are deemed to be indivisible causes of action, Yates, 194 Cal. App. 3d 195.  (Mot. 6.)[4]

12   However, Plaintiffs submit the Mother's emotional distress claim and the Father's wrongful

13   death claim each have a separate $250,000 MICRA limit, as the rule does not limit noneconomic

14   damages to "a single injury-causing incident," but rather, recovery is limited for the discrete

15   injury to each spouse because damages flow from injury, not negligent acts.

16        In Yates, the defendant performed surgery and professional negligence resulted in the

17   later death of the decedent.  Yates, 194 Cal. App. 3d at 198.  Defendant challenged the damages

18   award based on MICRA, and the multiple plaintiffs joined in the wrongful death action, argued

19   the statute did not limit the recovery in the wrongful death action.  The court disagreed, finding

20   the statute unambiguous: "Its plain language unequivocally manifests a desire to place a

21   $250,000 cap on awards for noneconomic damages in all medical malpractice litigation, whether

22   recovery is sought by patients who have themselves suffered personal injuries or by the survivors

23   of such victims who initiate suits for wrongful death." Id. at 199.  The court explained the

24   legislative history's examination of the issue:

25             Should any lingering doubt exist on this point, it is quickly
              dispelled by an examination of the legislative history of section
26            3333.2. Certain of the tentative drafts of the proposed MICRA

27   _____
     [4]  For purposes of this motion, Plaintiffs state they only consider the Father's wrongful death claim, as the
28   grandmother, Plaintiff Cuellar, asserted an Indirect NIED that Plaintiffs acknowledge is subsumed in the wrongful
     death $250,000 cap.  (Mot. 6-7.)

> legislation actually did explicitly exclude plaintiffs in wrongful death actions from the specified ceiling on noneconomic damages and permitted them to recover "[a]ll noneconomic damages. ..." (Assem. Bill No. 1 (1975-1976 2d Ex. Sess.) May 19, 1975, proposed Health & Saf. Code §§ 21153, 21154, pp. 11-12; Sen. Amend. to Assem. Bill No. 1 (1975-1976 2d Ex. Sess.) June 27, 1975, §§ 24.6, 24.7.) Ultimately, however, the Legislature rejected that approach in favor of a comprehensive provision which restricted the amount of noneconomic damages without regard to the status of the plaintiff.

Id.  The court also rejected plaintiff's argument that the $250,000 limitation should be applied to each plaintiff individually and not to all plaintiffs in the aggregate in the wrongful death action:

> However, it is evident from the terms of the statute that while each injured plaintiff is entitled to seek noneconomic damages, the maximum recovery permitted in any single medical malpractice *action* is $250,000, regardless of the number of plaintiffs involved. (3) Since the Legislature was obviously aware that "case precedent has consistently held 'only *one action* [can] be brought for the wrongful death of a person thereby preventing multiple actions by individual heirs and the personal representative' ..." and that "the cause of action for wrongful death has been consistently characterized as 'a joint one, a single one and an indivisible one' ..." *Canavin v. Pacific Southwest Airlines, supra*, 148 Cal.App.3d at p. 529; italics in original; *Cross v. Pacific Gas & Elec. Co*. (1964) 60 Cal.2d 690, 694 [36 Cal.Rptr. 321, 388 P.2d 353]), we can but conclude its use of the word "action" in section 3333.2 represents its conscious decision to limit the total recovery for noneconomic loss in such suits to $250,000.

Id. at 200–01.  Thus, Yates concluded the wrongful death "action," as a single and invisible action no matter the number of plaintiffs, was subject to the $250,000 cap because the legislature was aware of such nature of a wrongful death action and the maximum recovery permitted in any single medical malpractice "*action*" is $250,000.  Id.

In Atkins, the California Court of Appeal held that because a loss of consortium injury is a separate and independent claim of the spouse and is "not merely derivative" of the other spouse's claim for injury, two separate MICRA caps apply.  Atkins v. Strayhorn, 223 Cal. App. 3d 1380, 1395 (Ct. App. 1990) (hereinafter "Atkins") ("In contrast, a spouse's damages for loss of consortium are not proportionately reduced by the amount of comparative negligence attributable to the other spouse . . . [t]hus, unlike an action for wrongful death, Eileen's claim for loss of consortium is not merely derivative of Owren's claim for personal injuries.").  The Atkins

8

1   court emphasized that Section 3333.2's language supports the holding as "the statute focuses on

2   the 'injured plaintiff' who is  entitled to recover noneconomic losses in an amount not to exceed

3   $250,000[;] [n]othing in the statute limits the defendant's liability to that amount[;] [h]ad the

4   Legislature intended to limit the defendant's liability encompassing all legal proceedings arising

5   from a single act of professional negligence to $250,000, it would have included the language

6   'single act of negligence' to accomplish this purpose[;] . . . [and] the statute does not limit

7   noneconomic damages to 'a single injury-causing incident.[,]' [but] [r]ather, recovery is limited

8   for the discrete injury to each spouse because damages flow from injury, not negligent acts." Id.

9   at 1395-96.

10      In Burgess, the California Supreme Court held that a mother has her own, direct NIED

11  claim when one act of medical negligence harms both her and her child during birth, finding the

12  mother's claim was based on her own personal emotional damages as the birthing mother.  2

13  Cal.4th at 1076-1079.  The court considered the unique circumstances of medical malpractice in

14  the context of labor and delivery, and the emotional meaning and impact of the birth of a child

15  on the birthing mother in relation to the duty the physician owes to both the mother and the child,

16  respectively:

17         To accept Gupta's argument would require us to ignore the
           realities of pregnancy and childbirth. Burgess established a
18         physician-patient relationship with Gupta for medical care which
           was directed not only to her, but also to her fetus. The end purpose
19         of this medical care may fairly be said to have been to provide
           treatment consistent with the applicable standard of care in order to
20         maximize the possibility that Burgess's baby would be delivered in
           the condition in which he had been created and nurtured without
21         avoidable injury to the baby or to Burgess. (Cf. Cunningham et al.,
           Williams Obstetrics, supra, at p. 1.) Moreover, during pregnancy
22         and delivery it is axiomatic that any treatment for Joseph
           necessarily implicated Burgess's participation since access to
23         Joseph could only be accomplished with Burgess's consent and
           with impact to her body.
24
           In addition to the physical connection between a woman and her
25         fetus, there is an emotional relationship as well. The birth of a
           child is a miraculous occasion which is almost always eagerly
26         anticipated and which is invested with hopes, dreams, anxiety, and
           fears. In our society a woman often elects to forego general
27         anesthesia or even any anesthesia, which could ease or erase the
           pain of labor, because she is concerned for the well-being of her
28         child and she anticipates that her conscious participation in and

1    observance of the birth of her child will be a wonderful and joyous
     occasion. An obstetrician, who must discuss the decision regarding
2    the use of anesthesia with the patient, surely recognizes the
     emotionally charged nature of pregnancy and childbirth and the
3    concern of the pregnant woman for her future child's well-being.
     The obstetrician certainly knows that even when a woman chooses
4    to or must undergo general anesthesia during delivery, the
     receiving of her child into her arms for the first time is eagerly
5    anticipated as one of the most joyous occasions of the patient's
     lifetime. It is apparent to us, as it must be to an obstetrician, that
6    for these reasons, the mother's emotional well-being and the health
     of the child are inextricably intertwined.

7    Burgess, 2 Cal. 4th at 1076.  Because of the unique nature between a birthing mother and injured

8    child, the California Supreme Court rejected the defendant's argument that a birthing mother's

9    NIED claim related to the negligence that led to the death of her child was "purely derivative" of

10   the injury to her child, and instead found a mother is also a direct victim of the medical

11   negligence that may kill or injure her child, and thus a mother can maintain her own NIED claim

12   as a direct victim of that negligence.   Id. at 1074 ("Gupta, however, has succumbed to the

13   confusion in this area by failing to recognize that the distinction between bystander and direct

14   victim cases is found in the source of the duty owed by the defendant to the plaintiff . . .

15   argu[ing] . . . that, when the emotional distress for which damages are claimed is 'purely

16   derivative' of the injury of another, the plaintiff may only recover such damages by satisfying the

17   criteria for bystander recovery [and] that Burgess's damages are 'derivative' because he owed no

18   duty of care to Burgess to avoid injuring her child [and] may recover for her emotional distress,

19   if at all, only as a bystander.  We disagree.").

20        Plaintiffs argue that just as a spouse's loss of consortium claim is an independent claim

21   with its own 250,000 MICRA cap, Atkins, 223 Cal. App. 3d at 1395, a birthing mother's NIED

22   claim is a separate claim from a father's wrongful death claim and should have its own separate

23   MICRA cap.  (Mot. 8.)  The Court agrees.

24        Projecting out from Atkins, had the Mother here brought her own separate complaint for

25   NIED based on the negligent delivery of her child, there appears no clear reason or line of

26   analysis from Defendants as to why the Mother would not be entitled to damages as set forth in

27   Burgess, with a $250,000 cap, and then if the Father had filed his own wrongful death action,

28

1  why he would not have been able to maintain that action subject to the $250,000 cap.  Atkins,

2  223 Cal. App. 3d at 1394 ("The fact she voluntarily consolidated her action . . . should not

3  change the result.").   The Atkins court explained that while joinder is preferred, a loss of

4  consortium claim can be maintained separately from the injured spouse's action:

> Although joinder in one action is "the preferred method for
> asserting a claim of loss of consortium ..." (*Rodriguez v. Bethlehem
> Steel Corp.* (1974) 12 Cal.3d 382, 408, fn. 29 [115 Cal.Rptr. 765,
> 525 P.2d 669]), an action for loss of consortium can be maintained
> independently of the action by the physically injured spouse.
> (*Abellon v. Hartford Ins. Co.* (1985) 167 Cal.App.3d 21, 25-26
> [212 Cal.Rptr. 852].) (6b) Had Eileen brought a separate action for
> loss of consortium, there would be no doubt of her entitlement to a
> separate $250,000 limit.[9] The fact she voluntarily consolidated her
> action with that of Owren should not change the result. Where, as
> here, a claim for loss of consortium is joined with a spouse's claim
> for physical injuries in an action for medical malpractice, each
> spouse is entitled to recover up to $250,000 for his or her separate
> noneconomic losses.

13  Id.; see also Helling, 28 Cal. App. 3d 434 (noting that in California, while a wrongful death

14  action is joint, single, and indivisible, there is "no requirement that plaintiffs must join all causes

15  of action and all potential defendants in one action.").

16        In Colburn, twin babies died during birth.  Colburn v. United States, 45 F. Supp. 2d 787,

17  793 (S.D. Cal. 1998) (hereinafter "Colburn").  The plaintiffs brought the following claims: "(1)

18  Mr. and Mrs. Colburn's wrongful death claim for Austin Colburn; (2) Mr. and Mrs. Colburn's

19  wrongful death claim for Wyatt Colburn; (3) Mrs. Colburns' NIED claim; (4) Mr. Colburn's

20  NIED claim; (5) Mr. Colburn's loss of consortium claim; and (6) Mr. and Mrs. Colburn's

21  negligent spoliation of evidence claim."  Id. at 788.  Mrs. Colburn sought damages in the amount

22  of $750,000, and Mr. Colburn sought damages in the amount of $500,000.  Id.  The Colburn

23  court rejected the mother's argument that she was entitled to $750,000 for her claims:

> Mrs. Colburn argues that MICRA's limitation should apply to each
> of her claims, thus allowing a potential recovery of $750,000 for
> her three remaining claims for wrongful death and NIED. Mrs.
> Colburn asserts that *Burgess v. Superior Court,* 2 Cal.4th 1064,
> 1071, 9 Cal.Rptr.2d 615, 831 P.2d 1197 (1992), allows such a
> recovery because there, the California Supreme Court held that a
> mother could recover for negligence, emotional distress, and
> wrongful death. *Id.* at 1071, 9 Cal.Rptr.2d 615, 831 P.2d 1197.
> However, the *Burgess* Court did not address the issue of MICRA's

> applicability to recovery under these claims. Thus, the holding in Burgess is inapposite and does not support Mrs. Colburn's argument.

Id. at 793. The court stated: "[n]either the California Supreme Court nor the appellate courts have ever held that a single plaintiff can recover more than the MICRA limit for noneconomic damages [and] [t]o the contrary, the courts have consistently limited the maximum recovery to $250,000, regardless of the number of claims alleged." Id. Accordingly, the court found "that MICRA provides a $250,000 maximum aggregate recovery for a single plaintiff . . . [and] Mr. and Mrs. Colburn ha[d] a combined maximum potential recovery of $500,000 for all noneconomic damages." The Court specifically noted in the conclusion that the "following claims remain[ed] in the action: Mrs. Colburn's first and second claims for wrongful death, Mrs. Colburn's third claim for negligent infliction of emotional distress, and Mr. Colburn's fifth claim for loss of consortium." Id. at 794 n.5.[5]

In S.K., the court ordered separate damages caps for a mother and child for negligence during delivery. Although only one act of medical negligence occurred, the court cited Burgess in concluding that the mother and child "suffered non-economic damages as a result of independent physical injuries, and that the MICRA statute does not require they share one award for their resulting non-economic damages." S.K. v. United States, No. 00-1240-B (LSP), 2003 U.S. Dist. LEXIS 25211, at *14 (S.D. Cal. June 10, 2003) (hereinafter S.K."). While there was not much by way of analysis by the court of the statute or caselaw, the Court notes there was separate *physical* injury to both the mother and child.

## C. Consideration of Defendants' Specific Arguments

The Court now turns to consider more pointed arguments made by Defendants in opposition. Defendants concede the Atkins court interpreted the MICRA cap to be per claim, and not per negligent act, and found a loss of consortium claim stands alone as a separate wrong

---

[5] Plaintiffs proffer that in Colburn, citing Burgess, the court *recognized* a birthing mother's separate NIED claim and found the total MICRA cap was $500,000 because the father had a loss of consortium claim as well. To be clear, as discussed herein, the mother's $250,000 portion was based on the wrongful death claim and NIED claims, without the court expressly delineating between them, and which were *only her* claims as considered by the court, and the father's separate loss of consortium claim had a separate $250,000 cap.

1   to a separate plaintiff, even if the separate wrong stemmed from the same negligent act.  As the

2   court explained:

> In addition to Owren being an injured plaintiff, Eileen is also an
> injured plaintiff, having been awarded damages for loss of
> consortium. Although her cause of action arises from bodily injury
> to her husband, the injury suffered is personal to her. "Loss of her
> husband's consortium impairs a wife's interests which are wholly
> separate and distinct from that of her husband: ' "... the wife's loss
> is just as real as it is distinct. She can no longer enjoy *her* legally
> sanctioned and morally proper privilege of copulation or
> procreation, and is otherwise deprived of *her* full enjoyment of her
> marital state. These are *her* rights, not his." ' [Citations.]" (*Lantis
> v. Condon* (1979) 95 Cal.App.3d 152, 157, 157 Cal.Rptr. 22;
> original italics.) From a negligent defendant's perspective, Eileen
> "is simply a foreseeable plaintiff to whom he owes a separate duty
> of care." (*Ibid.*)

11   Atkins, 223 Cal. App. 3d at 1394.  As the Court summarized above, the Atkins court disagreed

12   that the limit should apply to the collective recovery, because the statute speaks in terms of a

13   single action:

> The language of section 3333.2 supports our conclusion the
> $250,000 limit of noneconomic damages applies separately to
> Owren's and Eileen's independent claims. The statute focuses on
> the "injured plaintiff" who is entitled to recover noneconomic
> losses in an amount not to exceed $250,000. Nothing in the statute
> limits the defendant's liability to that amount. Had the legislature
> intended to limit the defendant's liability encompassing all legal
> proceedings arising from a single act of professional negligence to
> $250,000, it would have included the language "single act of
> negligoence" to accomplish this purpose. Contrary to Strayhorn's
> assertion, the statute does not limit noneconomic damages to "a
> single injury-causing incident." Rather, recovery is limited for the
> discrete injury to each spouse because damages flow from injury,
> not negligent acts.

22   Atkins, 223 Cal. App. 3d at 1395–96.  Defendants state that while Atkins holds that in a loss of

23   consortium claim, because the claim of one spouse is discrete from the negligent act to the other

24   spouse, each claim receives a separate cap, this limited exception has not been extended to other

25   claims.  Rather, Defendants argue that in all other cases, MICRA provides a $250,000 maximum

26   aggregate recovery for a single plaintiff regardless of the number of claims, Colburn, 45 F. Supp.

27   2d at 793–94 ("with respect to each plaintiff, MICRA limits the aggregate maximum recovery

28   for all noneconomic damages to $250,000.").

1    Defendants emphasize the California Legislature consciously decided that all heirs in a

2    wrongful death action are limited to an aggregate of $250,000 for general damages, <u>Yates</u>, 194

3    Cal. App. 3d at 200-201 ("the cause of action for wrongful death has been consistently

4    characterized as a joint one, a single one and an indivisible one . . .  we can but conclude its use

5    of the word 'action' in section 3333.2 represents its conscious decision to limit the total recovery

6    for noneconomic loss in such suits to $250,000.") (internal quotations and citations omitted).

7    Defendants submit that Mr. Richards' and Ms. Cuellar's bystander NIED claims do not have a

8    separate cap because bystander NIED is not a discrete claim.  As noted above, Plaintiffs concede

9    the claim of Ms. Cuellar for NIED does not have a separate cap; that all Plaintiffs here are

10   limited to $500,000; and that all heirs must share the general damages cap of $250,000 for a

11   wrongful death claim.  However, Plaintiffs emphasize their position that the Mother has a

12   separate NIED claim, and thus there are two claims, and two Plaintiffs (Mother and Father) for a

13   combined cap of $500,000.

14   The Court finds that <u>Yates</u> and Defendants' reliance on it does not alter the Court's

15   analysis or conclusions as while it is undisputed that there is one MICRA cap for a wrongful

16   death claim no matter how many claimants to the same wrongful death claim, <u>Burgess</u>, <u>Atkins</u>,

17   <u>Schwarder</u>, and other case law discussed herein, support separate caps for claims distinct from

18   the wrongful death action.  The Court is nonetheless mindful in considering whether allowing the

19   Mother to have a separate damages cap for the NIED claim, while allowing the Father to recover

20   on the wrongful death claim could sidestep the intent of MICRA.  The Court imagines scenarios

21   where a birthing mother experiences negligence and the death of her child and the child has no

22   father present instituting a wrongful death claim, and a defendant there would be subject to only

23   a single $250,000 cap, with the birthing mother apparently barred, under Plaintiffs' theory here,

24   from recovering separate and distinct awards of $250,000 for the NIED claim and the wrongful

25   death claim.  The parties have not addressed this potential scenario, and it appears Plaintiffs

26   emphasize that the Mother's claim is the NIED claim, and the Father's claim is the wrongful

27   death claim.  This could potentially create additional liability for medical practitioners depending

28   on if there is a potential other claimant, besides the mother, to bring the wrongful death claim,

1    when the mother brings the NIED claim on behalf of herself.  Despite the Court's concerns, such

2    facts are not before the Court.  Here, there are still two distinct Plaintiffs here in the Mother and

3    the Father, and the Mother's NIED claim is nonetheless, for the Mother, clearly a separate and

4    distinct claim from the Father's under <u>Burgess</u>.  Under <u>Atkins</u> and other case law discussed

5    herein, separate and distinct claims are not subject to the same MICRA cap, at least when

6    brought by distinct claimants and could have been instituted as separate actions.

7          Defendants correctly note the negligent causing of emotional distress is not a discrete tort

8    from negligence, that there is no duty to avoid negligently causing emotional distress to another,

9    and therefore damages from emotional distress are only recoverable if the defendant has

10   breached some other duty to a plaintiff, imposed by law, assumed by a defendant, or by virtue of

11   a special relationship.  <u>Potter v. Firestone Tire & Rubber Co.</u>, 6 Cal. 4th 965, 985 (1993) ("The

12   lesson of these decisions is: unless the defendant has assumed a duty to plaintiff in which the

13   emotional condition of the plaintiff is an object, recovery is available only if the emotional

14   distress arises out of the defendant's breach of some other legal duty and the emotional distress is

15   proximately caused by that breach of duty [and] [e]ven then, with rare exceptions, a breach of the

16   duty must threaten physical injury, not simply damage to property or financial interests.").

17   Defendants proffer this principle is incorporated into both direct and bystander theories of NIED,

18   with each relying on a finding of negligence, and for example, in <u>Burgess</u>, the doctor had a

19   separate duty to a mother in labor as to emotional anguish.

20         Defendants cite <u>Huggins</u>, wherein parents overdosed their child based on negligently

21   written instructions provided by the pharmacist, and the court held the parents did not have a

22   separate claim for emotional distress against the pharmacist because a contract between a parent

23   a medical caregiver to provide medical treatment for a child is not in itself sufficient to impose a

24   duty of care owed to the parent, even if it is reasonably foreseeable that the parents would be

25   emotionally distressed.  <u>Huggins v. Longs Drug Stores California, Inc.</u>, 6 Cal. 4th 124, 131–32,

26   862 P.2d 148, 153 (1993); However, the <u>Huggins</u> court itself provides clarification as to why the

27   case here would likely be distinguishable:

28              It was only because the parents in *Burgess, supra,* 2 Cal.4th 1064,

9 Cal.Rptr.2d 615, 831 P.2d 1197, and *Marlene F., supra,* 48 Cal.3d 583, 257 Cal.Rptr. 98, 770 P.2d 278, qualified as the *patients* of the defendant caregivers that they could recover for emotional distress as the defendants' direct victims. To put it another way, the duty assumed by the defendant physician included provision of care to the plaintiffs themselves. [citations] Here, the end and aim of the prescription dispensed by defendant was to provide medical treatment for plaintiffs' infant son, Kodee. He, not plaintiffs, was the only patient being served by the transaction.

There is no material distinction between the professional duties of pharmacists and the duties of other health care providers that allows the parent of a child patient for whom a prescription is negligently filled to recover from the pharmacist as a direct victim. The Legislature has declared the practice of pharmacy to be "a dynamic patient-oriented health service." (Bus. & Prof.Code, § 4046, subd. (b).) The pharmacist must not only select, measure, and label the prescribed medication in accordance with the doctor's orders but also must be alert to errors or problems and bring them to the doctor's attention. Pharmacists also spend substantial amounts of time advising patients about the proper use of a prescribed drug and its possible side effects or interaction with other medications. [citations]

Nothing in those duties imposes any legal responsibility upon pharmacists for the emotional well-being of the patient's parents, even if the pharmacist knows the patient is an infant and that the parents will be administering the medication.

Huggins, 6 Cal. 4th at 131–32.   Thus, Burgess was considered by the Huggins court to be directly distinguishable because of the physician relationship to the birthing mother.  Further, in Marlene, cited by Huggins, the court found "the therapist, as a professional psychologist, clearly knew or should have known in each case that his sexual molestation of the child would directly injure and cause severe emotional distress to his other patient, the mother, as well as to the parent-child relationship that was also under his care [and the] abuse of the therapeutic relationship and molestation of the boys breached his duty of care to the mothers as well as to the children."  Marlene F. v. Affiliated Psychiatric Med. Clinic, Inc., 48 Cal. 3d 583, 590–91, 770 P.2d 278, 282 (1989) ("In the present case, the complaint explicitly and expressly alleged that the mothers of Robert and Phillip, as well as the children, were patients of the therapist . . . further alleged that the therapist 'was aware of the relationship between the patients' and that he 'believed that one of the problems in the family arose from the relationship between [mother and son].'  In other words, the counselling was not directed simply at each mother and son as

16

1    individuals, but to both in the context of the family relationship [and] the complaint alleged that

2    the discovery by the mothers of the therapist's sexual misconduct caused them serious emotional

3    distress, further disrupting that family relationship.").  Given the holding in <u>Burgess</u>, the Court

4    does not find Defendants' use of <u>Huggins</u> to be persuasive to the analysis herein.

5           Defendants argue that because bystander NIED is not discrete from the negligence, it

6    cannot be brought independent of a negligence claim, and unlike a loss of consortium claim

7    which can be brought independently, bystander NIED cannot have a separate MICRA cap and

8    Father and Ms. Cuellar's NIED claims are subsumed by the wrongful death claim.  (Opp'n 9.)

9    Defendants further argue the Mother is limited to a shared MICRA cap of $250,000 despite the

10   fact she would ordinarily be able to make a claim for direct NIED based on the alleged negligent

11   delivery under <u>Burgess</u>.

12          In <u>Burgess</u>, the parents initially filed a complaint for emotional distress after birth

13   complications, and during litigation, the child died, and a separate action for wrongful death was

14   filed and consolidated.  2 Cal.4th at 1070.  As discussed above, the mother argued she was

15   entitled to NIED relief as a direct victim, and the Court agreed based on the separate duty owed

16   to the birthing mother.  Defendants emphasize the California Supreme Court limited the mother

17   from seeking categories of distress typically associated with the general damages of wrongful

18   death, such as loss of affection, society, and companionship, <u>id.</u> at 1085.  Defendants are correct

19   that the <u>Burgess</u> court discussed the limitation on seeking categories of damages similar to a

20   wrongful death action, however, that was in the context of an outright ban on parents recovering

21   damages for loss of filial consortium:

22          Finally, we concur with Gupta that Burgess's potential damages
             for her emotional distress are limited by the public policy concerns
23           supporting this court's decision to prohibit claims for loss of filial
             consortium. However, we reject Gupta's argument that Burgess
24           must be completely barred from recovering damages for her
             emotional distress because those damages are essentially
25           coextensive with damages that are properly asserted in a claim for
             loss of filial consortium.
26
             It is well established in this state that parents may not recover
27           damages for loss of filial consortium. (*Baxter v. Superior
             Court* (1977) 19 Cal.3d 461 [138 Cal.Rptr. 315, 563 P.2d 871].)
28           Reasons of public policy explain why such a cause of action is not

                                                17

recognized, including: "[t]he intangible character of the loss, which can never really be compensated by money damages; the difficulty of measuring damages; the dangers of double recovery of multiple claims and of extensive liability. ..." (*Id.* at p. 464.)

We are not persuaded, however, that this rule completely bars all of the damages for emotional distress that Burgess might have suffered. While some portion of Burgess's emotional distress may have arisen from her loss of Joseph's consortium, other portions of her emotional distress may have separate, distinct origins that would not subject damages for these portions of her emotional distress to a bar mandated by the policy concerns underlying the prohibition of the loss of filial consortium claim. Thus, we hold that damages arising from loss of Joseph's affection, society, companionship, love and disruption of Burgess's "normal" routine of life to care for Joseph cannot be recovered by Burgess no matter how her claim for these damages is denominated. (*Baxter v. Superior Court, supra,* 19 Cal.3d at p. 466; *Martinez v. County of Los Angeles, supra,* 186 Cal.App.3d at pp. 893-895.) We believe that this limitation on recovery eliminates the possibility of duplicative recovery by Burgess for damages which may be recovered by her child. We further hold to the extent, however, that Burgess's emotional distress arose from the "abnormal event" of participating in a negligent delivery and reacting to the unexpected outcome of her pregnancy with resulting " 'fright, nervousness, grief, anxiety, worry, mortification, shock, humiliation and indignity, as well as physical pain' " (*Thing, supra,* 48 Cal.3d at pp. 648-649, quoting *Deevy v. Tassi* (1942) 21 Cal.2d 109, 120 [130 P.2d 389]) resulting from defendant's breach of duty, then Burgess's emotional distress is of the type for which we have previously recognized recovery should be provided and is distinguishable from the type of emotional distress for which recovery is prohibited by virtue of the policy considerations underlying the prohibition of filial consortium claims.

Burgess, 2 Cal. 4th at 1084–85.

Defendants contend the Burgess court made no comment as to whether the recovery would be controlled by a separate MICRA cap, but argue the issue was directly addressed in Colburn, which found that MICRA "provides a $250,000 maximum aggregate recovery for a single plaintiff." Colburn, 45 F. Supp. 2d at 793. However, the Burgess court did discuss the potential impact of its ruling in relation to the intent of MICRA and related policy concerns:

We are, of course, aware of what has been termed a "crisis" in the availability and cost of medical malpractice insurance . . .

. . . In light of these observations, we realize that the imposition of liability in cases such as the one at hand may impose certain societal costs. For several reasons, however, we believe that the impact of our decision recognizing Burgess's claim against Gupta

for damages for emotional distress will not unduly burden the community or health care providers in the field of obstetrics or result in the imposition of damages disproportionate to fault.

First, our Legislature has taken action to alleviate the "crisis" in medical malpractice liability and insurance by enacting the Medical Injury Compensation Reform Act of 1975 (Stats. 1975, chs. 1, 2, pp. 3949-4007) (hereafter MICRA). As a result of MICRA, the amount of "noneconomic damages," such as damages for emotional distress, that may be recovered in an action arising from the professional negligence of a health care provider is capped at $250,000. (Civ. Code, § 3333.2.) Because the Legislature has expressly considered and taken action to ameliorate the impact of increasing costs of liability coverage for health care providers, we are reluctant to further limit recovery in a situation where a plaintiff has suffered a foreseeable injury in the context of her physician-patient relationship.

Second, MICRA has established a restrictive statute of limitations for medical malpractice claims brought by adults. (Code Civ. Proc., § 340.5.) With certain narrow exceptions, no cause of action for medical malpractice may be brought by an adult later than "three years after the date of injury or one year after the plaintiff discovers, or through the use of reasonable diligence, should have discovered, the injury, whichever occurs first." (*Ibid.*) Thus, in the context of labor and delivery, the potential for long-delayed liability for emotional distress and the difficulty of defending against an action for such intangible damages many years after they occurred is slight.

Third, the class of potential plaintiffs in these cases is clearly limited. The only potential plaintiffs are pregnant women with whom the defendant has established a physician-patient relationship. Contrary to Gupta's assertions, there is no possibility, much less a specter, of unlimited liability presented by these unique cases.

Burgess, 2 Cal. 4th at 1083–84.  Thus, while the California Supreme Court did not directly address a separate cap for the mother's NIED claim vis a vis the wrongful death claim, it did consider the fact that the independent claim of the mother for NIED in of itself would be subject to MICRA's provisions in limiting the bounds of such type of claim in impacting medical malpractice insurance and society in light of the legislative purpose of MICRA.  The court considered it specifically in relation to the unique nature of a birthing mother subjected to medical negligence in the birth of her child.

In Colburn, the mother brought two wrongful death claims based on deceased twin babies – to which Mr. Colburn joined and added his own NIED claim.  As noted in the opinion, in his

opposition brief therein, Mr. Colburn agreed to dismiss his two wrongful death claims, and in oral argument, agreed to dismiss his NIED claim.  Id. at 788.  Defendants emphasize that, as discussed above, Ms. Colburn argued based on Burgess that she could recover $750,000 for the negligence, emotional distress, and wrongful death claims, but the court reasoned Burgess did not address the issue of MICRA as to these clams, and determined Burgess did not support Colburn's argument.  Colburn, 45 F. Supp. 2d at 793 ("Neither the California Supreme Court nor the appellate courts have ever held that a single plaintiff can recover more than the MICRA limit for noneconomic damages. To the contrary, the courts have consistently limited the maximum recovery to $250,000, regardless of the number of claims alleged.").

Defendant Kaweah states that after Mr. Colburn agreed to dismiss the wrongful death claims and the NIED claim, only Ms. Colburn's three claims remained.  (Opp'n 10.)  Kaweah, states that in Colburn, "there was no loss of consortium claim as Plaintiffs contend in their moving papers," and that the court "allowed a recovery of $500,000, because of the loss of two babies and not because Ms. Colburn was able to recover for one NIED claim and one wrongful death claim."  (Opp'n 11.)  Kaweah states to construe the holding in another way, would render one of the child's lives meaningless, and that the Colburn court held "MICRA allows for one $250,000 aggregate recovery for a single plaintiff, however . . . allows an individual to recover $250,000 for each baby lost under a wrongful death action."  (Opp'n 11.)

Although the loss of two children could have theoretically or logically weighed on the decision, Defendant's description of the Colburn decision appears inaccurate.  There is no indication of the court's reliance on the death of two babies in the Colburn decision in determining that each of the plaintiffs, Mr. and Ms. Colburn, were each entitled to a $250,000 separate cap.  Plaintiffs, and Defendant United States agree that Defendant Kaweah's summary of Colburn is incorrect as presented to the Court.[6]  The Court agrees that there is no support

---

[6]  While it joined the opposition, the United States proffered that it "respectfully disagrees" with Kaweah's construction of the Colburn decision "to the extent it suggests that the court concluded that plaintiffs (a mother and father) had a combined maximum potential recovery of $500,000 'because of the loss of two babies,' as the court "concluded that plaintiffs had a combined maximum potential recovery of $500,000 because, in addition to mother's claims (for which she had a maximum potential recovery of $250,000), the father had a claim for loss of consortium (for which he had a maximum potential recovery of $250,000)."  (ECF No. 39 at 1 n.1.)

1   within the opinion to support that framing, as the <u>Colburn</u> court stated: "the Court finds that

2   MICRA provides a $250,000 maximum aggregate recovery for a single plaintiff.  Accordingly,

3   Mr. and Mrs. Colburn have a combined maximum potential recovery of $500,000 for all

4   noneconomic damages."  <u>Colburn</u>, 45 F. Supp. 2d at 793.  Thus, the express language of the

5   opinion supports the conclusion that the recovery was based on the two plaintiffs, not the two

6   decedents.  Again, while it may be logical that this was related to the two deaths, the court went

7   on in its conclusion to specifically note that: "[t]he following claims remain in the action: Mrs.

8   Colburn's first and second claims for wrongful death, Mrs. Colburn's third claim for negligent

9   infliction of emotional distress, and Mr. Colburn's fifth claim for loss of consortium."  <u>Id.</u> at 794

10  n.5.  Thus, Kaweah's contention that Plaintiffs' briefing inaccurately proffered there was a loss

11  of consortium claim, is also inaccurate.  The father did retain a loss of consortium claim.  The

12  <u>Colburn</u> court expressly stated that this was the only claim that the father retained following the

13  dismissal of his other claims, and thus the recovery to the father *was* for the loss of consortium

14  claim.  The mother retained two separate wrongful death claims and was entitled to recover a

15  total of $250,000 as a single plaintiff to the negligent action resulting in the two deaths.

16       Defendants cite to <u>Taylor</u>.  Ms. Taylor brought a loss of consortium claim and NIED

17  claim against a hospital for negligence which resulted in her husband's severe brain damage.

18  821 F.2d at 1430.  The district court awarded Ms. Taylor $500,000 for her loss of consortium

19  claim, and $100,000 for her NIED claim.  <u>Id.</u>  Defendants proffer the Ninth Circuit held damages

20  were required to be reduced to $250,000 under MICRA, and argue that like Ms. Taylor, Ms.

21  Richards is not allowed to recover two separate MICRA caps even though Direct NIED is a

22  separate and discrete claim, as pursuant to <u>Colburn</u> and <u>Burgess</u>, Ms. Richards' separate and

23  direct NIED claim is limited by her wrongful death cause of action.  (Opp'n 11.)

24       However, the Ninth Circuit's focus in <u>Taylor</u> was on whether the defendant raised the

25  issue of the MICRA cap in a timely manner, and found the district judge erred in refusing to

26  reduce damages after it was raised following judgment.  821 F.2d at 1433.  There appears to be

27  no substantive discussion of the propriety of reducing the damages under the statute in relation to

28  the particular claims that would be directly relevant to the issues at hand here.  In fact, the Ninth

1    Circuit expressly noted that "Amici contend that § 3333.2 limits total noneconomic damages

2    recoverable in *all actions* arising out of a single incident of professional negligence to $250,000,

3    rather than $250,000 per action, plaintiff or injury," that "[t]he government did not raise this

4    argument below, but instead moved that the district court reduce damages awarded to Taylor to

5    $250,000," and concluded "[a]ccordingly, we do not decide whether § 3333.2 limits

6    noneconomic damages to $250,000 per action or $250,000 per incident of professional

7    negligence." Id. at 1433 n.4.

8         As for S.K., Defendants contend the court allowed two MICRA caps because there both

9    the mother and child suffered physical injuries during birth which required surgery for both, and

10   in its holding, reasoned Burgess allowed the mother to have a separate MICRA cap because she

11   suffered independent physical injuries from the injuries her child suffered, as well as emotional

12   distress. Id. at *13. Defendants emphasize the S.K. court did not consider whether two separate

13   MICRA caps would have applied had the child not survived and the mother brought a wrongful

14   death action, unlike here where Baby Liana did not survive, and Ms. Richards did not suffer

15   physical injuries on top of her emotional distress. Defendants submit that S.K. only allows a

16   surviving child to bring a medical negligence claim and also allows the mother to bring her own

17   direct NIED claim; however, here, because wrongful death requires all heirs to be joined in the

18   action and limits recovery to one single and shared $250,000 MICRA cap, Ms. Richards is not

19   allowed a separate recovery for her Direct NIED claim. (Opp'n 12.)

20        The Court finds the fact there physical injuries in S.K. do not change the fact that it relied

21   on Burgess which focused on the emotional distress claim of the birthing mother as a separate

22   and discrete claim based on the unique physical and emotional connection to the child and

23   birthing process, and did not depend its decision on whether there were also physical injuries to

24   the birthing mother. See Burgess, 2 Cal. 4th at 1079 ("Moreover, even if Burgess had failed to

25   allege physical injuries, physical injury is not a prerequisite for recovering damages

26   for *serious* emotional distress, especially when, as here, there exists a guarantee of genuineness

27   in the circumstances of the case.") (internal citations and quotations omitted). Further, the court

28   stated the "alleged negligent actions resulting in physical harm to Joseph breached a duty owed

1   to both Joseph and Burgess [and] Burgess was unavoidably and unquestionably harmed by this

2   negligent conduct."  Id. at 1076-77.  Notably, while not discussed directly by the parties, the

3   complaint in this action does appear to facially allege physical injury to Plaintiff Ms. Richards.

4   (ECF No. 1 at 5.)

5       Defendants argue that Plaintiffs inaccurately apply Schwarder.  There the decedent and

6   wife settled medical negligence claims for $285,000 for economic and non-economic damages

7   based on a delayed cancer diagnosis.  Schwarder v. United States, 974 F.2d 1118, 1120 (9th Cir.

8   1992).  Decedent husband then passed away, and three children brought wrongful death suits,

9   which were consolidated.  The government argued the children could not recover because they

10  were barred because of the settlement agreement under FTCA and MICRA, however, the court

11  determined the aspects of the statutes pertaining to settlement did not directly control other

12  persons besides the settling parties, and the children could bring their own claims.  The court

13  nonetheless held the children could not receive more than one shared recover of $250,000 for the

14  wrongful death claim.  The Ninth Circuit applied Yates and Atkins:

15      The *Yates* court explained the reasoning behind this rule as
        follows:
16
            Since the Legislature was obviously aware that "case
17          precedent has consistently held 'only *one action* [can] be
            brought for the wrongful death of a person thereby
18          preventing multiple actions by individual heirs and the
            personal representative' ..." and that "the cause of action
19          for wrongful death has been consistently characterized as 'a
            joint one, a single one and an indivisible one' ..." ... we can
20          but conclude its use of the word "action" in section 3333.2
            represents its conscious decision to limit the total recovery
21          for non-economic loss in such suits to $250,000.

22      Id. at 200–01, 239 Cal.Rptr. at 386 (citations omitted). Thus, under
        California law the Schwarder children as a group could not receive
23      more than $250,000 in non-economic losses for the wrongful death
        of their father.
24
        Contrary to the government's assertion, however, California law
25      does not require that any portion of the $285,000 awarded to Harry
        and Marlis Schwarder be counted toward the limit on non-
26      economic damages limit on the Schwarder children's wrongful
        death action. *Atkins v. Strayhorn,* 223 Cal.App.3d 1380, 273
27      Cal.Rptr. 231 (1990), involved an action for medical negligence
        brought by an injured plaintiff and a suit for loss of consortium by
28      the plaintiff's wife. The defendant argued that the combined

recovery of the husband and the wife was limited by section 3333.2 to $250,000, because both claims arose from "a single injury-causing incident" of professional negligence. *Id.* at 1394, 273 Cal.Rptr. at 238. The court rejected this argument and held that the husband and wife were each entitled to recover up to $250,000, because the wife's loss of consortium action was independent of the action of her physically injured spouse. *Id.* at 1395, 273 Cal.Rptr. at 239. The court distinguished its holding from that in *Yates* on the ground that "[w]hile a wrongful death action is a joint, single and indivisible one, loss of consortium is a separate and independent claim from a spouse's claim for personal injury." *Id.*

Applying both *Yates* and *Atkins* to the instant matter, we hold that the recovery obtained by Harry and Marlis Schwarder for the personal injury suffered by him does not limit the recovery of the Schwarder children in their separate action for wrongful death. Accordingly, we conclude that the Schwarder children had a separate limit of $250,000 which was not exceeded by the district court in its damage award.

Schwarder, 974 F.2d at 1126.

While Defendants are correct that the Ninth Circuit utilized Yates in holding there is only one recovery for wrongful death, in addition to the reliance on prior settlements not being binding on the non-settling parties under the applicable laws, the Ninth Circuit also utilized Atkins in holding that the settlement as to the personal injury aspect did not impact the separate cap for the wrongful death cap, because it was a separate and independent claim.  Defendants argue the facts of Schwarder are not related to the instant matter, as Baby Liana did not survive long enough to bring a medical negligence suit and settle her claim before her parents and grandmother brought the wrongful death claim, and even if she had, the children in Schwarder were allowed to bring the wrongful death claim because "California does not permit a decedent to compromise by contract his survivors' right to wrongful death recovery."  Schwarder, 974 F.2d at 1123 n.3.  However, the full discussion by the Ninth Circuit rejected the government's argument that the wrongful death claim is not a separate and distinct claim from a personal injury claim principally on the fact that a wrongful death action is expressly a separate and distinct cause of action in the California Code of Civil Procedure:

The government contends that, even if state law governs the scope of section 2672's exclusion of liability, California law does not maintain that a wrongful death action is separate and independent

24

1

2

3

4

from the injured party's claim. We reject the government's argument that the Schwarder children's wrongful death action is not separate from their parents' action for personal injury under California law. The children's wrongful death claim is created by Section 377 of the California Code of Civil Procedure. *See* Cal.Code Civ.Proc. § 377 (West 1973 & Supp.1992). We have previously held that:

5

6

7

8

the cause of action granted by Section 377 to the heirs and personal representatives of a decedent is not derivative in character or a continuation or revival of a cause of action existing in the decedent before his death, but is an original and distinct cause of action granted to the heirs and personal representatives of the decedent to recover damages sustained by them by reason of the wrongful death of the decedent.

9

10

11

12

13

*Van Sickel,* 285 F.2d at 90. As an extension of this principle, "California does not permit a decedent to compromise by contract his survivors' right to wrongful death recovery. Any limitation based on contract with the decedent, therefore, can have no application against survivors under California law." *In re Aircrash in Bali, Indonesia on April 22, 1974,* 684 F.2d 1301, 1306 (9th Cir.1982) (citations omitted).

14

15

<u>Id.</u>  As relevant here, the California Supreme Court in <u>Burgess</u> has expressly recognized the claim of the birthing mother for NIED as a separate and distinct claim from the child or father.

16

17

18

19

20

21

22

23

24

25

26

27

28

Defendants argue that even if Baby Liana had survived to bring suit, any settlement of her suit would not have allowed her to limit her parent's wrongful death action, and like <u>Schwarder</u>, all plaintiffs would still be limited to a single $250,000 MICRA cap because of the wrongful death cause of action.  (Opp'n 13-14.)  Defendants contend that interpreting <u>Schwarder</u> in another way would undermine the holdings of <u>Atkins</u> and <u>Yates</u>, as the <u>Schwarder</u> court was aware of <u>Atkins</u>' ability to allow a separate recovery for loss of consortium due to a direct and discrete harm and still held that <u>Yates</u> limited all heirs in a wrongful death action to a single and indivisible $250,000 MICRA cap.  (Opp'n 14.)  The Court does not quite gleam the significance of this particular argument, as there was no loss of consortium claim discussed in <u>Schwarder</u>, and it is not disputed that a wrongful death action is indivisible and subject to the $250,000 MICRA cap.  The Ninth Circuit's discussion of <u>Atkins</u> affirmed its acceptance of the <u>Atkins</u> holding in distinguishing <u>Yates</u>, and declining to allow the separate and independent personal injury claim settlement to impact the subsequent wrongful death action, which had its own MICRA cap

1   indivisible as to all claimants.

2   **D.    The Court finds Summary Adjudication Should be Granted in Favor of**
3        **Plaintiffs**

4        Based on the above analysis and findings concerning the parties' arguments and the

5   caselaw provided by the parties in briefing, the Court finds Plaintiffs have demonstrated the

6   weight of the authority tips in favor of their position that the Mother's separate and discrete

7   NIED claim has its own $250,000 MICRA cap that she can recover, and that the Father, is

8   entitled to recover $250,000 for the Baby Liana's wrongful death.

9        Above, the Court expressed some concerns regarding whether allowing a separate

10   damages cap for the NIED claim, while allowing the Father to recover on the wrongful death

11   claim could sidestep the legislative intent of MICRA.   There is merit to the Defendants'

12   arguments concerning the legislative intent of the statute.   However, the Court finds the caselaw

13   presented as interpreting the statute by California Courts and federal courts, particularly in

14   conjunction with the recognition of the separate and distinct cause of action discussed by the

15   California Supreme Court in <u>Burgess,</u> stemming from the incredibly unique circumstances of a

16   birthing mother and her physical and emotion experience during birth, leads the Court to find in

17   favor of Plaintiffs based on the record before the Court.   Tort law derives itself from common

18   law, as amended by the legislature, and thus the Court follows applicable common law unless it

19   has been altered by California law.   <u>See</u> Cal. Civ. Code § 22.2 ("The common law of England, so

20   far as it is not repugnant to or inconsistent with the Constitution of the United States, or the

21   Constitution or laws of this State, is the rule of decision in all the courts of this State."); <u>Lean v.</u>

22   <u>Givens</u>, 146 Cal. 739, 742, 81 P. 128, 129 (1905) ("The common law is in force in this state,

23   except as modified by statute or the Constitution."); <u>Klein v. Klein</u>, 58 Cal. 2d 692, 698, 376

24   P.2d 70, 74–75 (1962) ("[I]t is to be remembered that the common law rule in this state is not a

25   mere court-declared rule.   To the contrary the rule is of legislative origin [Cal. Civ. Code § 22.2]

26   [and] [w]hen the Legislature sees fit to change the common law rule it is able as we are not to

27   view the problem in all its ramifications and to provide the necessary safeguards against abuses

28   of the law."); <u>but see</u> <u>State of Cal. ex rel. State Lands Com. v. Superior Ct.</u>, 11 Cal. 4th 50, 75,

1   900 P.2d 648, 663 (1995) ("Although we adopted the general rule of accretion . . . nothing

2   prevents California courts from creating exceptions to that rule.  The common law is dynamic,

3   not a monolith admitting of no variation. It was not frozen in time as of 1850 . . . Moreover, the

4   rule has been shaped at least in part by state statutory and constitutional provisions.").  For the

5   reasons discussed herein, the Court finds in favor of Plaintiffs' proffered limited legislative scope

6   of MICRA, as amending the common law principles of damages for tort claims and causes of

7   actions.

8        Additionally, as discussed above, the <u>Burgess</u> court did consider the policy concerns of

9   MICRA in relation to the unique circumstances of a birthing mother.  The Court finds other

10  concerns voiced in <u>Burgess</u> give additional reasons to the Court to not limit the amount of

11  damages available to a birthing mother's claim.  <u>See Burgess</u>, 2 Cal. 4th at 1082 ("we are

12  reluctant to provide any incentives unrelated to the standard of care that could, even

13  unconsciously, influence choices made by a physician regarding how care should be provided

14  during labor and delivery.  Relegating delivering mothers to the status of 'bystanders' for

15  purposes of recovering damages for their emotional distress could create such incentives . . .

16  Second, the failure to find a duty of care owed to the mother to avoid injuring the fetus would be

17  inconsistent with prior decisions permitting a mother to state a claim against an obstetrician

18  whose negligence results in stillbirth of; rather than injury to, the child.").

19       The crux of the issue as the Court sees it is that the Mother here is maintaining a claim

20  that has been established as separate and distinct from the wrongful death cause of action.  The

21  injury from the experience as the birthing mother is wholly hers.  <u>See</u> Cal. Prac. Guide Pers. Inj.

22  Ch. 3-F, § 3:1935 ("Thus, where a single act of medical negligence causes *discrete* injury

23  to *multiple* plaintiffs, *each* plaintiff is entitled to recover up to $250,000 in noneconomic

24  damages"); <u>Atkins</u>, 223 Cal. App. 3d at 1395-96 ("the statute focuses on the 'injured plaintiff' . .

25  . recovery is limited for the discrete injury to each spouse because damages flow from injury, not

26  negligent acts."); <u>Burgess</u>, 2 Cal. 4th at 1081 ("Any medical care for the fetus, including

27  assistance in its delivery, necessarily involves the mother's consent and bodily participation. An

28  obstetrician's negligent delivery of a child, resulting in the child's injury, is closely (even

1   inextricably) related to any emotional distress incurred by the mother upon her realization of the

2   injury to her child."); c.f. Huggins, 6 Cal. 4th at 131–32 ("It was only because the parents

3   in [Burgess and Marlene] . . . qualified as the *patients* of the defendant caregivers that they could

4   recover for emotional distress as the defendants' direct victims.  To put it another way, the duty

5   assumed by the defendant  physician included provision of care to the plaintiffs themselves.").

6        Hypothetically, had the Mother here brought her own separate complaint for NIED based

7   on the negligent delivery of her child, there appears no clear reason or line of analysis from

8   Defendants as to why the Mother would not be entitled to damages as set forth in Burgess, with a

9   $250,000 cap, and then if the Father had filed his own wrongful death action, why he would not

10  have been able to maintain that action subject to the $250,000 cap.  Atkins, 223 Cal. App. 3d at

11  1394 ("The fact she voluntarily consolidated her action . . . should not change the result.").  It

12  does not appear such two hypothetical separate actions would be subject to mandatory joinder, a

13  proposition Defendant United States mainly concedes based on Burgess, though Defendant

14  Kaweah disputes.  Indeed, as noted above, while a wrongful death action is joint, single, and

15  indivisible, there is "no requirement that plaintiffs must join all causes of action and all potential

16  defendants in one action."  Helling, 28 Cal. App. 3d 434.  Further, it appears in such scenario, res

17  judicata would not bar such separate actions if one were instituted before the other.[7]

18

---

19  [7] "Res judicata, or claim preclusion, prevents the relitigation of a claim previously tried and decided."   Clark v.
    Bear Stearns & Co., 966 F.2d 1318, 1320–21 (9th Cir. 1992).  It "bars all grounds for recovery which could have
20  been asserted, whether they were or not, in a prior suit between the same parties *on the same cause of action.*"  Id.
    (emphasis added).  In determining whether successive lawsuits involve the same cause of action, the court considers:
21  "(1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of
    the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two
22  suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional
    nucleus of facts."  While the Court finds such consideration ultimately not determinative as to the issues here, and
23  not briefed or addressed by the parties, the Court nonetheless would consider res judicata inapplicable to the two
    types of claims.
24        Given the law pertaining to the wrongful death cause of action in California, and the holding in Burgess
    as to the Mother's cause of action, Factor 1 would weigh against finding res judicata as the wrongful death cause of
25  action is independent and the Mother's claim is not derivative of the wrongful death action.  As to Factor 2, while
    the evidence would surely overlap given the incident, evidence pertaining to the Mother's experience in the causing
26  of her NIED and her unique experience as the birthing mother as established under Burgess would differ from the
    evidence pertaining to the death of the child, and the wrongful death claimant's evidence as to the relationship with
27  the decedent.  Factor 3 would weigh against finding res judicata because, again, Burgess clearly establishes the
    independent right of the Mother and the independent duty of the physician to the Mother, and thus the actions would
28  involve infringement of different rights.  Finally, Factor 4, would be similar to Factor 2 given the similar factual
    incident, but there are notable differences in the experience of the Mother in the NIED claim versus the wrongful

1    Again, in <u>Yates</u>, 194 Cal.App.3d 195, where the court found that wrongful death

2  claimants are entitled to only one $250,000 non-economic damage limit in an action for

3  wrongful death, the court's decision was based on the rationale that a wrongful death claim is a

4  statutorily created cause of action which requires all claimants having rights under the wrongful

5  death statute be joined into a single action for resolution.  Thus, because there can only be one

6  action for wrongful death, there can only be one MICRA limit.  In <u>Atkins</u>, the court found a

7  plaintiff suing for loss of consortium was entitled to a separate and distinct MICRA limit because

8  a loss of consortium plaintiff has a separate and distinct injury and separate and distinct right

9  violated by the medical negligence.  In <u>Burgess</u>, the California Supreme Court clearly

10  established a birthing mother's standing to claim NIED damages was based on her status as a

11  traditional plaintiff with a cause of action stemming for the physician-patient relationship and

12  duty owed to her, and her separate, distinct, and truly unique injury.

13    A natural outflow from such claim being separate and distinct for the birthing mother, is

14  that the wrongful death claimant's injury is discrete from such claim.  Cal. Prac. Guide Pers. Inj.

15  Ch. 3-F, § 3:1936 ("As with loss of consortium (¶ 3:1935), wrongful death claimants suffer

16  discrete injury in addition to the injury suffered by the victim.").  In <u>Schwarder</u>, the Ninth Circuit

17  utilized <u>Atkins</u>, which involved a loss of consortium claim and which the Ninth Circuit

18  summarized as holding such claim was a separate and independent claim from the wrongful

19  death claim, to distinguish <u>Yates</u>' applicability to wrongful death actions in general from

20  foreclosing the wrongful death recovery in <u>Schwarder</u> given it was separate from the personal

21  injury claim.  974 F.2d at 1126.  The Court does not see, and Defendants' have not demonstrated

22  why the Mother's claim for her own personal emotional injuries stemming from her involvement

23  as the birthing mother would limit the recovery of the Father for his wrongful death action.  <u>See</u>

24  <u>Schwarder</u>, 974 F.2d at 1126 ("Applying both *Yates* and *Atkins* to the instant matter, we hold that

25  the recovery obtained by Harry and Marlis Schwarder for the personal injury suffered by him

26  does not limit the recovery of the Schwarder children in their separate action for wrongful

27

28  death claim.  Considering the factors together, the Court would find res judicata would not apply, particularly given
the importance of Factor 3 in relation to the countervailing aspects of the other Factors.

death."); <u>Atkins</u>, 223 Cal. App. 3d at 1395-96; <u>S.K.</u>, 2003 U.S. Dist. LEXIS 25211, at \*14 (concluding the mother and child "suffered non-economic damages as a result of independent physical injuries, and that the MICRA statute does not require they share one award for their resulting non-economic damages."); <u>Colburn</u>, 45 F. Supp. 2d at, 793 (S.D. Cal. 1998) (Mr. and Mrs. Colburn ha[d] a combined maximum potential recovery of $500,000 for all noneconomic damages.").

Accordingly, the Court finds the Mother here is maintaining an NIED action that has been established as separate and distinct from the father's wrongful death cause of action, <u>Burgess</u>; <u>Atkins</u>, and each action has a separate MICRA damages cap.  Cal. Civ. Code § 3333.2(a)-(b) ("In *any action* for injury against a health care provider based on professional negligence, *the injured plaintiff* shall be entitled to recover noneconomic losses . . . In *no action* shall the amount of damages for noneconomic losses exceed two hundred fifty thousand dollars ($250,000).").

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

**IV.**

**CONCLUSION AND ORDER**

For the reasons explained above, the Court finds in favor of the Plaintiffs on the parties' stipulated motion for summary adjudication as to the Defendants' twelfth affirmative defenses, and the legal issue of whether MICRA limits recovery to a single and combined award of $250,000 for noneconomic damages for the Plaintiffs' claims in this action.  The motion for summary adjudication shall be granted in favor of Plaintiffs based on the Court's finding that MICRA does not limit Plaintiffs' recovery to one single $250,000 award, and that Plaintiffs are subject to one cap of $250,000 for Ms. Richards' claim of negligent infliction of emotional distress, and a separate cap of $250,000 for Plaintiff Mr. Richards' claim for wrongful death.

Accordingly, IT IS HEREBY ORDERED that:

1.    The stipulated motion for summary adjudication is GRANTED in favor of Plaintiffs; and

2.    Two $250,000 MICRA caps apply to the Plaintiffs' causes of action: one cap of $250,000 for Plaintiff Carolyn Richards' claim of negligent infliction of emotional distress, and one cap of $250,000 for Plaintiff Michael Richards' claim for wrongful death, for a total available noneconomic recovery to Plaintiffs of $500,000.

IT IS SO ORDERED.

Dated:    **February 2, 2022**

_____
UNITED STATES MAGISTRATE JUDGE